***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission REVERSES the holding of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer on August 18, 1999.
3. American Home Assurance is the carrier at risk.
4. Plaintiff's average weekly wage on August 18, 1999 was $430.00 per week.
5. Plaintiff sustained an injury on or about August 18, 1999 arising out of and in the course of her employment with defendant-employer.
Plaintiff's medical records concerning this claim are admitted into evidence as Stipulated Exhibit # 2.
7. Stipulated Exhibit # 3 is admitted into evidence and includes the following Industrial Commission Forms: 18, 19, 33, 33R, 60, and 61.
8. Plaintiff's written statement is admitted into evidence as Stipulated Exhibit # 4.
9. Defendant's Responses to plaintiff's First Set of Interrogatories are admitted into evidence as Stipulated Exhibit # 5.
10. Plaintiff's Answers to defendant's First Set of Interrogatories are admitted into evidence as Stipulated Exhibit # 6.
11. Plaintiff's personnel file from defendant-employer is admitted into evidence as Stipulated Exhibit # 7.
12. The issues to be determined by the Full Commission are whether plaintiff's back and leg problems are causally related to her August 18, 1999 compensable injury and whether plaintiff is entitled to attorney's fees pursuant to N.C.G.S. § 97-88.1.
13. The depositions of Dr. Carl Foulks, Dr. Eddie Powell, and Dr. John A. Smid are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was thirty-five (35) years old and employed by defendant-employer as a slotter on her date of injury, August 18, 1999. Plaintiff's job duties included counting out merchandise and sending it to the correct slots which required lifting and continuous standing. Plaintiff began working in this position on January 18, 1999.
2. On August 18, 1999, plaintiff had just returned from a break when a forklift driver ran into two pallets which were located in front of her cart, pushing the cart into plaintiff's right lower shin area. Plaintiff was knocked back and twisted her body in an effort to keep herself from falling back into the main aisle where forklifts were going back and forth. Plaintiff did not actually fall down. Plaintiff did not immediately feel any back pain as a result of the twisting incident. The onset of plaintiff's back pain did not occur until approximately three months later in November 1999.
3. Plaintiff was first seen at Occupational Health on September 2, 1999. At that time, plaintiff was diagnosed with a contusion to her right lower leg and was given work restrictions of standing no longer than two hours at a time.
4. Plaintiff followed up with Occupational Health on September 9, 1999 and September 23, 1999. Plaintiff still expressed a tingling sensation and pain in her foot, but her leg tingling had improved. Plaintiff's work restrictions were continued and she was referred for an orthopedic evaluation. Defendants admitted plaintiff incurred a compensable injury by Form 60 on September 23, 1999.
5. Plaintiff treated with by Dr. John A. Smid of Hoke Orthopedic on October 20, 1999. At this first visit with Dr. Smid, plaintiff complained only of right knee pain. Dr. Smid diagnosed plaintiff with a possible Grade 1 Strain of the medial collateral ligament with unresolved discomfort, pain in the area of pes anserine with maybe early bursitis, and a contusion to the right lower extremity. Dr. Smid recommended plaintiff undergo physical therapy and limited her to sedentary work duties only.
6. By mid November 1999, plaintiff had some improvement with physical therapy, but was continuing to suffer from medial sided pain and paresthesisas from the middle portion of her right leg to her knee area. On November 17, 1999, plaintiff first complained to Dr. Smid of lower back pain which she stated she had begun experiencing in the last week or so. This was plaintiff's first mention of lower back pain to any medical provider since her August 18, 1999 injury by accident. Dr. Smid recommended continued physical therapy.
7. Plaintiff's knee pain failed to improve and Dr. Smid recommended an MRI which was performed December 8, 1999. Plaintiff's MRI revealed a small joint effusion.
8. On December 29, 1999, Dr. Smid recommended that plaintiff undergo knee arthroscopy to determine what was causing her pain. However, at this time plaintiff was experiencing high blood pressure problems and was being treated for this ailment by her family physician, Dr. Carl Foulks. Dr. Foulks was also simultaneously treating plaintiff for her right leg and back.
9. Plaintiff returned to Dr. Smid on May 10, 2000 at which time she continued to experience medial joint line pain as well as paresthesias in her lower extremity. Plaintiff also stated at this visit that the pain in her lower back was radiating into her right lower extremity. Dr. Smid again recommended a knee arthroscopy but instructed plaintiff that her back pain needed to improve before she underwent the procedure. Plaintiff declined an injection to her pes anserine bursa at this visit. Thus, plaintiff's knee treatment was put on hold until there was some further resolution of her back problems.
10. Dr. Smid's records of plaintiff's June 7, 2000 visit reflect that plaintiff's primary physical complaint on this date again regarded her lower or lumbar back pain rather than her knee or leg. Dr. Smid again recommended physical therapy for plaintiff's back pain.
11. Defendants have never denied medical treatment for plaintiff's knee or leg injuries sustained in her compensable injury by accident and have paid all medical bills associated with that treatment. Defendants formally denied that plaintiff's back pain or blood pressure problems were causally related to her compensable accident on a Form 61, completed on August 2, 2000.
12. Plaintiff subsequently moved from Fayetteville to Roseboro, North Carolina. Plaintiff first saw Dr. Eddie Powell on April 19, 2001 and he became her family physician. At this visit with Dr. Powell, plaintiff reported back pain and numbness in her right leg.
13. Dr. Powell recommended an MRI which was performed on April 28, 2001 and revealed a left paracentral subligamentous disc herniation at L4-L5 and a small herniated neucleus pulposis at L5-S1. Dr. Powell also began treating plaintiff for her high blood pressure.
14. On May 29, 2001, Dr. Powell injected plaintiff's back with steroids in an attempt to relieve plaintiff's continued back pain.
15. On August 14, 2001, Dr. Powell restricted plaintiff to no lifting, bending, crawling, twisting, running, jumping, or climbing and no prolonged sitting, standing or walking; however, Dr. Powell was not asked and did not offer an opinion as to what medical condition these restrictions were imposed to accommodate.
16. Dr. Smid testified that he could not rule out the possibility that twisting can cause a back injury; however, he stated that he cannot relate plaintiff's back condition to her injury at work due to the time between the onset of plaintiff's back pain and date of injury. Dr. Smid documented in his records that he did not believe plaintiff's back condition was related to her injury at work.
17. Treatment of plaintiff's knee injury was put on hold due to her back condition beginning in May 2000 at which point Dr. Smid was recommending knee arthroscopy due to plaintiff's continuing pain complaints that he was unable to explain. Throughout this entire period, plaintiff was under work restrictions related to her knee limiting her to seated work only, even though her back complaints were becoming more severe than her knee complaints.
18. By December 8, 2000, the last time Dr. Smid treated plaintiff, he felt that even without an arthroscopy, plaintiff was at maximum medical improvement for her knee condition. Dr. Smid stated that in December 8, 2000 he would have allowed plaintiff to perform work standing, or even walking, so long as she did not stoop and was allowed to sit for fifteen minutes if she was required to stand or walk for two to three hours without interruption. In summary, by December 8, 2000, plaintiff's work restrictions for her knee became much less severe than those issued for her back condition. The greater weight of the evidence shows that by December 8, 2000 plaintiff's knee restrictions were not so severe that she could not have worked, had she not had the back condition.
19. Although Dr. Powell stated that he thought plaintiff was totally disabled on April 19, 2001, he did not offer an opinion as to the cause of plaintiff's disability on this date. Furthermore, Dr. Powell testified that he could not state that plaintiff suffered a back injury at work and deferred the question of causation to plaintiff's treating doctors nearer the time of her injury.
20. Based upon the greater weight of the testimony of Dr. Smid and Dr. Powell, the Full Commission finds that plaintiff's back condition is not causally related to her August 18, 1999 compensable injury.
21. Plaintiff's compensable knee injury of August 18, 1999 had reached maximum medical improvement as of December 8, 2000.
22. Plaintiff testified that the only work restriction imposed by Dr. Powell associated with her compensable knee and leg condition regards prolonged standing, the same restriction as imposed by Dr. Smid, and the other restrictions Dr. Powell imposed are related to her back condition.
23. Plaintiff initially testified that her prior employment consisted of only heavy, industrial type work. Later, plaintiff admitted to several previous jobs that were neither heavy nor industrial including a desk clerk position at Days Inn, "title clerk" position with Axon Auto Sales, and cashier/stocker at Fayetteville Drug Store. In any event, there appear to have been a number of jobs in plaintiff's prior work history that would accommodate her current restriction against prolonged standing associated with her compensable knee and leg condition.
24. Plaintiff admitted that she has not looked for work with any employer and does not know whether there are jobs currently available that are consistent with her prior work history within her current restriction for her knee and leg injury of no prolonged standing. Plaintiff failed to notify her employer that she had been released to return to work with restrictions. Instead, plaintiff contends that she remains totally disabled despite contrary medical evidence.
25. Based upon the greater weight of the medical and lay evidence, the Full Commission finds that plaintiff has not proven ongoing disability as a result of her compensable injury on August 18, 1999.
26. Defendants have not engaged in stubborn unfounded litigiousness during the course of defending this claim.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. "Disability" means the incapacity because of injury to earn wages which the employee was receiving at the time of the injury in the same or any other employment. N.C.G.S. § 97-2(9). The plaintiff has the burden of proving both the existence of his disability and its degree.Hilliard v. Apex Cabinet Company, 305 N.C. 593, 595 (1982).
2. The filing of a Form 60, or the payment of benefits beyond the statutory period following the filing of a Form 63 does not create a presumption of continuing disability. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001). Defendants filed a Form 60; therefore, the burden of proof for continuing disability rests with plaintiff.
3. Except in uncomplicated medical situations, testimony from a medical expert witness is required to establish the necessary causal relationship between alleged disability and the injury. Click v. Pilot FreightCarriers, Inc., 41 N.C. App. 458, 255 S.E.2d 192 (1979). In this case, the greater weight of the testimony of expert medical witnesses Dr. Foulks, Dr. Smid, and Dr. Powell fails to show that plaintiff's back condition is causally related to her compensable knee injury of August 18, 1999.
4. Disability may be proven in one of four ways: (1) the production of medical evidence that the employee is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that the employee is capable of some work, but has after a reasonable effort been unsuccessful in his efforts to obtain employment; (3) the production of evidence that the employee is capable of some work but that it would be futile because of preexisting condition, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that the employee has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Prod. Distrib., 108 N.C. App. 762, 425 S.E.2d 454
(1993). Plaintiff has presented insufficient evidence to satisfy her burden of proving that she remained disabled after December 8, 2000 as a result of her compensable injury on August 18, 1999; therefore, plaintiff is entitled to receive no further benefits pursuant to the Workers' Compensation Act.
5. Defendants are entitled to a credit for all sums paid to plaintiff that were not due and payable when made against any future compensation that plaintiff may receive pursuant to her compensable knee injury. N.C.G.S. § 97-42.
6. Defendants have not engaged in stubborn, unfounded litigiousness; therefore, plaintiff is not entitled to an award of attorney's fees pursuant to N.C.G.S. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission REVERSES the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Defendants may discontinue payment of temporary total disability compensation to plaintiff as of December 8, 2000.
2. Defendants are entitled to a credit for sums paid to plaintiff not due when owed against any future award of compensation plaintiff may receive for her compensable knee injury.
3. Each party shall bear its own costs.
This the ___ day of September 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER